# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHNNY VERNON WOLFORD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 17-1052** |
| **v.** | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Deputy Commissioner for Operations,** | * | |
| **Social Security Administration,** | * | |
| | * | |
| **Defendant.**[1] | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff Johnny Vernon Wolford seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 14).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the

---

[1] The positions of Commissioner of Social Security and Deputy Commissioner of Social Security are vacant. Nancy A. Berryhill is performing the delegable duties and functions of the Commissioner of Social Security. Brief for Respondent at 1 n.1, *Culbertson v. Berryhill*, No. 17-773 (U.S. Apr. 5, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.

I

**Background**

Born in 1961, Plaintiff has a high-school education and previously worked as a carpenter, landscaper, maintenance repairer, and insulation installer. R. at 21. Plaintiff protectively filed applications for DIB and for SSI on August 22, 2013, alleging disability beginning on August 7, 2009 (later amended to June 27, 2013), due to heart problems, bipolar disorder, COPD, anxiety, ADHD, and sleep apnea. R. at 32, 198-210, 231. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 64-131, 136-37. On August 19, 2015, ALJ María Alexander Núñez held a hearing in Hagerstown, Maryland, at which Plaintiff and a vocational expert ("VE") testified. R. at 28-63. On October 27, 2015, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of June 27, 2013, through the date of the decision. R. at 9-27. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on March 20, 2017. R. at 1-6, 8. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 17, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A.  **State Agency Consultants**

On December 23, 2013, a state agency medical consultant, J. Biddison, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 70, 81-82. Dr. Biddison opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 70, 81. Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations, however. R. at 70, 81.

On January 27, 2014, a state agency consultant, Elliott Rotman, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listing 12.04 relating to affective disorders (R. at 68-69, 79-80). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Dr. Rotman opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 68, 79. Dr. Rotman did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 68, 79. Dr. Rotman thus assessed Plaintiff's mental RFC and opined that he was moderately limited in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) respond appropriately to changes in the work setting; and to (9) set realistic goals or to make plans independently of others. He otherwise was not significantly limited. R. at 71-72, 82-83.

On June 5, 2014, another state agency consultant, Byron T. Pack, Psy.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09 relating to affective disorders, anxiety-related disorders, and substance addiction disorders (R. at 95-96, 109-10). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06, 12.09. Dr. Pack opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 96, 110. Dr. Pack did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 96, 110. Dr. Pack thus assessed Plaintiff's mental RFC and opined that he was moderately limited in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers without distracting

4

them or exhibiting behavioral extremes; (7) respond appropriately to changes in the work setting; and to (8) set realistic goals or to make plans independently of others. R. at 97-99, 111-13.

**B.      Treating Sources' Opinions**

The ALJ reviewed the opinions of Plaintiff's treating sources in her decision:

> On July 10, 2014, Ester C. Estwick, M.D., completed a Mental Medical Source Statement for [Plaintiff]. Here, Dr. Estwick opined that [Plaintiff] has extreme limitations with maintaining attention and concentration for extended periods and perform at a consistent pace. He has marked limitations with carrying out detailed instructions; working in coordination with others; completing a normal workday and workweek; and interacting appropriately with others. On July 7, 2015, Dr. Estwick completed another Medical Source Statement for [Plaintiff]. Here, [Plaintiff] has extreme limitations with carrying [out] detailed instructions; maintaining attention and concentration; working in coordination with others; completing a normal workday and workweek; performing at a consistent pace; accepting instructions; getting along with coworkers; responding appropriately to changes in the work setting; traveling to unfamiliar places; and setting realistic goals. . . .
>
> On January 27, 2015, Shaheen [Iqbal], M.D., completed a Medical Source Statement for [Plaintiff]. Here, Dr. [Iqbal] opined that due to [Plaintiff's] chronic obstructive pulmonary disease, coronary artery disease, and obstructive sleep apnea, he can stand/walk for less than 2 hours and sit for about 4 hours during an 8-hour workday. He can rarely lift and carry less than 10 pounds, twist, stoop, crouch, and climb. Furthermore, he must avoid exposure to all environmental irritants.

R. at 20 (citations omitted); *see* R. at 499-501, 524-27, 555-57.

**C.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

> In written statements and in testimony, [Plaintiff] alleges disability due to heart issues, chronic obstructive pulmonary disease, sleep apnea, bipolar disorder, anxiety, and attention-deficit hyperactivity disorder. [Plaintiff] reports difficulty with breathing and with dizziness. He complains of fatigue because he does not sleep well at night. He complains of mood swings, and worsening depression, anxiety, and memory. [Plaintiff] reports that he does not like being around people, he does not trust anyone, he experiences crying spells, and he self-isolates.

R. at 17-18 (citations omitted) (citing R. at 230-47, 261-73, 276-81, 293-300); *see* R. at 34-56.

5

**D.    VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience and with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the light, unskilled jobs of price marker, mail clerk, or garment sorter. R. at 58-59.[3]  An individual with the limitations set forth in Dr. Estwick's July 2014 Mental Capacity Assessment could not perform any work in the national economy, however.  R. at 60-61, 499-500.  With the exception of his testimony regarding work tolerances and a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4]  R. at 61. When asked by Plaintiff's attorney the effect of an individual's being off task 10% in a workday and missing work two days in a month, the VE testified that the person would not be able to maintain employment if the person consistently missed two days per month.  R. at 61-62.

## III

## Summary of ALJ's Decision

On October 27, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of June 27, 2013; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* §§ 404.1567(b), 416.967(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a price marker, mail clerk, or garment sorter. R. at 14-22. The ALJ thus found that he was not disabled from June 27, 2013, through the date of the decision. R. at 22.

In so finding, the ALJ found that, with regard to concentration, persistence, or pace, Plaintiff had moderate difficulties. R. at 16. "[Plaintiff] reports difficulty with memory, concentration, and understanding. Due to his complaints and major depressive disorder, the undersigned finds that he has moderate difficulties in this functional area." R. at 16 (citations omitted); *see* R. at 240-47, 261-73.

> The ALJ then found that Plaintiff had the RFC to perform
>
> light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. He must be able to alternate between sitting and standing in place every 30 minutes. [Plaintiff] should only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but [he] should never climb ropes, ladders, and scaffolds. He must avoid concentrated exposure to pulmonary irritants. [Plaintiff] can perform unskilled (SVP 2) work in a non-production work setting with no interaction with the public and no more than occasional interaction with coworkers and supervisors.

R. at 17.

The ALJ considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 18. The ALJ gave "little weight" to Dr. Biddison's opinion regarding Plaintiff's physical RFC "because the evidence

received at the hearing level shows that [Plaintiff] was more limited than previously determined." R. at 20. The ALJ gave "great weight" to "the State agency psychological consultant's mental assessment . . . because it is consistent with the record as a whole." R. at 20. The ALJ gave "little weight" to Dr. Estwick's opinions "because they are inconsistent with the overall record and with [Plaintiff's] admitted activities of daily living." R. at 20. The ALJ gave "little weight" to Dr. Iqbal's opinion "because it was inconsistent with the overall record, with [Plaintiff's] admitted activities of daily living, and with [Plaintiff's] work activity of painting." R. at 20-21.

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ failed to give proper weight to the opinions of his treating physicians. Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 13-1. He also maintains that the ALJ's RFC assessment is legally insufficient because it fails to address his inability to remain on task during an eight-hour work day. *Id.* at 9-11. According to Plaintiff, the ability to perform unskilled work in a non-production work setting differs from the ability to stay on task. *Id.* at 10. For the reasons discussed below, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, the ALJ found that Plaintiff's difficulties in maintaining concentration, persistence, or pace were moderate "[d]ue to his complaints and major depressive disorder." R. at 16. Contrary to Plaintiff's argument, the ALJ's hypothetical question to the VE and her RFC

13

assessment limiting Plaintiff to "work in a non-production work setting" (R. at 17; *see* R. at 58) account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See, e.g.*, *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("While limitation to unskilled work alone is insufficient under *Mascio*, here the ALJ included other limitations that clearly account for [the claimant's] moderate limitation in concentration, persistence, or pace. Specifically, the limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace. Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus. Accordingly, I find no error warranting remand under *Mascio*."); *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). The ALJ, however, failed to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, he could remain on task for more than 90% of an eight-hour workday or not be absent at least two days per month at work. The ALJ "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (second alteration in original) (quoting *Monroe*, 826 F.3d at 189). In particular, the ALJ "must build a logical bridge between the limitations [she] finds and the VE evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). In short, the inadequacy of the ALJ's analysis frustrates meaningful review. *See Lanigan v. Berryhill*, 865 F.3d 558, 563

(7th Cir. 2017) (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday); *Ashcraft v. Colvin*, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *11 (W.D.N.C. Dec. 21, 2015) (remanding under fourth sentence of 42 U.S.C. § 405(g) because court was unable to review meaningfully ALJ's decision that failed to explain exclusion from RFC assessment an additional limitation of being 20% off task that VE testified would preclude employment). Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is appropriate. *See Mascio*, 780 F.3d at 636.

The Court also remands this case because the Court is unable to "undertake meaningful substantial-evidence review" in the absence of "more specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions." *Monroe*, 826 F.3d at 191. Here, the ALJ gave "great weight" to "the State agency psychological consultant's mental assessment . . . because it is consistent with the record as a whole." R. at 20. The ALJ further gave "little weight" to Dr. Estwick's opinions "because they are inconsistent with the overall record and with [Plaintiff's] admitted activities of daily living." R. at 20. The ALJ also gave "little weight" to Dr. Iqbal's opinion "because it was inconsistent with the overall record, with [Plaintiff's] admitted activities of daily living, and with [Plaintiff's] work activity of painting." R. at 20-21. The ALJ found that "the record reflects that [Plaintiff] is able to tend to his activities of daily living, socialize and interact with his family and friends, and concentrate, as evidenced by his ability to watch television and play computer games." R. at 20. Plaintiff "is able to perform his activities of daily living, mow lawns, and paint." R. at 20. "His depression and isolation does [sic] not keep him from attending church services or interacting with friends."

R. at 20.  Thus, Plaintiff's "current admitted activities of daily living diminish his credibility regarding the extent of his functional limitations secondary to his impairments." R. at 20.

Plaintiff testified, however, that he washed his laundry and mowed grass on a riding lawnmower only every week to two weeks.  R. at 43-44.  He "very rarely" watched television and read.  R. at 44.  Although he went to the library once a week or every few weeks, he had "a hard time concentrating when [he] read." R. at 50.  According to Plaintiff, he could "read for maybe a couple minutes [sic]" before losing his concentration.  R. at 50.  He played a game on a computer once or twice a week.  R. at 45-46.  Plaintiff also had visited his family members three or four times in the past three years.  R. at 46.  He attended church every Sunday.  R. at 46.  Although he had painted in the past, he would become dizzy from working on a ladder, and paint fumes would exacerbate his breathing problems.  R. at 56.  The ALJ here "did not acknowledge the limited extent of those activities as described by [Plaintiff] or explain how those activities showed that he could sustain a full-time job." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017).  Because the ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate for this reason as well. *Monroe*, 826 F.3d at 191.

# VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: July 16, 2018

/s/
Thomas M. DiGirolamo
United States Magistrate Judge